**FHARMACY RECORDS, a/k/a Fharmacy Records Production Co., Fharm I Publishing Company, and Shelton Rivers, Plaintiffs,**

v.

**Salaam NASSAR, Curtis Jackson, Darrin Dean, Def Jam Recording, Ruff Ryders, Justin Combs Publishing, Universal Music Publishing, Universal Music & Video Distribution Corporation, Emi April, Inc., Soo Soo's Sweet Swisher Music, and Schlecter, Agents and Attorneys, Defendants.**

Case No. 05–72126.

United States District Court,
E.D. Michigan,
Southern Division.

July 23, 2010.

See also 379 Fed.Appx. 522, 2010 WL 2294538.

Gregory J. Reed, Stephanie L. Hammonds, Detroit, MI, for Plaintiffs.

Michael D. Socha, Daniel D. Quick, Leslie C. Schefman, Bloomfield Hills, MI, Deborah J. Swedlow, J. Michael Huget, Ann Arbor, MI, for Defendants.

***OPINION AND ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO AWARD ATTORNEY'S FEES, ADOPTING REPORT AND RECOMMENDATION, AND GRANTING IN PART DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS***

DAVID M. LAWSON, District Judge.

Presently before the Court are the plaintiffs' objections to a report filed by Magistrate Judge Donald A. Scheer pursu-

ant to an order entered by the undersigned to conduct appropriate hearings on a joint motion for attorney's fees and costs filed by the defendants. On August 15, 2008, 572 F.Supp.2d 869 (E.D.Mich.2008), the Court found that the defendants were entitled to attorney's fees and costs in some amount, but referred the matter to Judge Scheer for a report on "the amount of attorney's fees, costs, and expenses, if any, that should be awarded to the respective defendants, and to determine further whether the plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses." Op. & Order, 572 F.Supp.2d at 882. On November 5, 2009, Judge Scheer filed his report recommending that the defendants' motion be granted in part, allowing some fees as requested, reducing some, disallowing others, and discussing expense reimbursement. Judge Scheer also recommended that the plaintiffs' attorney, Gregory J. Reed, should be held personally liable for the attorney's fees and some of the expert witness expenses. The plaintiffs filed timely objections to the report and recommendation, followed by two sets of repetitive supplemental objections. The defendants responded, and the matter is before the Court for *de novo* review.

In its previous order, the Court found that the defendants had shown that they were entitled to attorney's fees under the Copyright Act and as a result of discovery abuse by the plaintiffs. However, because the defendants did not make a proper showing that the amount of fees and costs they seek is reasonable, the Court engaged the services of Judge Scheer to address the details of the fee motion. The Court now reaffirms its determination that the defendants are entitled to attorney's fees under the Copyright Act, 17 U.S.C. § 505, and fees and costs under 28 U.S.C. § 1927 and, finding no merit in any of the plaintiffs' objections and agreeing with the findings and reasoning of the magistrate judge, adopts the recommendation as to the amounts and allocations.

## I.

The facts of this case are set forth in detail in the Court's order granting the defendants' motion for summary judgment and motion to dismiss, *see* dkt. # 248, and they need not be repeated here. In brief summary, the plaintiffs brought suit alleging that defendant Salaam Nassar stole a rhythmic beat created by plaintiff Shelton Rivers, a.k.a. the "Ess Man." After Rivers made the beat, the Fharmacy plaintiffs acquired an interest in it and secured copyright protection. Later on, rap artist DMX released a song with a strikingly similar beat entitled "Shot Down." Many of the defendants were involved in the production of "Shot Down" and sales of the album on which it appeared. When the album went platinum, the plaintiffs sued. Their theory was that Nassar had access to Rivers's equipment, and he simply lifted the beat when Rivers wasn't looking.

The case involved a substantial amount of electronic and documentary discovery, but when the defendants began to test the plaintiffs' claims against the evidence, things quickly unraveled. Whether the plaintiffs spun the case out of whole cloth or simply tried to bolster weaknesses through chicanery remains unknown. What *is* certain is that the plaintiffs engaged in fabrication and spoliation of evidence, using one lie to cover up another. And it is also clear that counsel Gregory Reed played a key role.

The Court so found when it dismissed the plaintiffs' case and entered judgment in favor of the defendants on March 31, 2008, 248 F.R.D. 507 (E.D.Mich.2008). The forty-eight-page opinion recounted in detail multiple instances of discovery misconduct by the plaintiffs and their counsel and concluded that "the conduct of the

plaintiffs and their attorney has been so egregiously improper and abusive that the ultimate sanction of dismissal is the only appropriate response." Op. & Order Granting Defs.' Mot. for Sum. J., 248 F.R.D. at 531. The Court found that the plaintiffs' complaint alleged a claim of unlawful "sampling" of a sound recording in violation of 17 U.S.C. § 114(b), the plaintiffs were unable to produce any evidence that the protected work and the accused work were identical, and the defendants were entitled to summary judgment on the merits of the claim. The Court also documented the disturbing conduct of the plaintiffs and their attorneys in the manipulation and destruction of evidence in the case, which resulted in termination sanctions.

On April 14, 2008, the plaintiffs filed a motion for relief under Rule 60 and a motion for reconsideration, followed by the plaintiffs' counsel's expedited motion for relief from judgment filed on August 8, 2008, yet one more motion for relief from the March 31, 2008 order filed on August 11, 2008, and a motion for recusal of the undersigned. Several defendants also moved for an award of attorney's fees and costs. The Court addressed these post-judgment motions on August 15, 2008, when it denied all of the plaintiffs' motions and referred the defendants' motion for attorney's fees to Magistrate Judge Donald A. Scheer for consideration. See Op. & Order [dkt. # 271]. The Court stated:

> In the present case the Court has little trouble concluding that the plaintiffs and their counsel should be held jointly and severally liable for the defendants' costs and fees. An award is appropriate under both 17 U.S.C. § 505 and 28 U.S.C. § 1927; the Court need not resort to its inherent authority .... justice requires that the defendants be compensated for the distress in warding off a frivolous case.

Although section 505 does not expressly authorize an award from an attorney for a party, 28 U.S.C. § 1927 plainly does. A court may hold parties and their counsel jointly and severally liable under that statute for "multipl[ying] the proceedings in any case unreasonably and vexatiously." See 28 U.S.C. § 1927; Royal Oak Entertainment, LLC, 486 F.Supp.2d at 679. There likely is cause to hold attorney Gregory Reed accountable for at least a portion of the fees and expenses, and perhaps against Mr. Reed's co-counsel, Stephanie Hammonds, as well. Those issues will be referred to Magistrate Judge Donald A. Scheer to determine.

... The Court finds that the exhibits on which [the defendants' demands for attorney's fees] are premised do not furnish the level of detail that is required to determine the reasonableness of the fee requests.... These entries do not allow the Court to assess the amount of time spent on specific tasks by individual lawyers, and they do not furnish sufficient detail to permit a reasoned challenge by the plaintiffs or their attorneys. The defendants state in their brief that they are "willing to provide their billing records should the Court so desire, but given the conduct of Plaintiffs' counsel to date, they prefer that such a review occur in camera by the Court." ... The defendants correctly anticipate the need for further review, but they have not justified the need for in camera production. However unreasonably the plaintiffs and their counsel have behaved, they have not forfeited the right to examine the defendants' billing records.

The Court, therefore, will refer the defendants' attorney's fees motion to Magistrate Judge Donald A. Scheer to conduct a hearing in whatever manner he deems appropriate for the purpose of

determining the amount of attorney's fees, costs, and expenses, if any, that should be awarded to the respective defendants, and to determine further whether the plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses . . . .

*Id.* at 881–82.

The Court's August 15, 2008 opinion caused yet another flurry of motions on the part of the plaintiffs. The plaintiffs filed eight motions for reconsideration or relief from the ruling (dkts. # 277, 278, 285, 290, 291, 300, 306, 312), and followed them with two more motions to disqualify the undersigned judge. The first disqualification motion was assigned by random draw to Judge Stephen J. Murphy of this Court, who denied it on November 18, 2008, 2008 WL 4965337. Then, on December 4, 2008, the Court denied the rest of the plaintiffs' motions for reconsideration or relief from judgment and the remaining motion for disqualification. The Court continued referral of the motion for attorney's fees and costs to Judge Scheer, who, as noted earlier, issued his report and recommendation recommending award of attorney's fees and costs to the defendants on November 5, 2009. In the meantime, the court of appeals affirmed the dismissal, choosing not to address the merits of the copyright claim, but finding that the plaintiffs' discovery abuses warranted dismissal. *Fharmacy Records v. Nassar*, Nos. 08–1607, 08–2201, 379 Fed.Appx. 522, 2010 WL 2294538 (6th Cir., June 7, 2010). Addressing the decision to dismiss the case for discovery abuse, the court stated:

Based on our careful review of the district court's opinion and the record as a whole, we find that the district court identified and properly applied the correct legal standard, and made a reasoned conclusion upon its weighing of the relevant factors. . . . We conclude that the district court properly exercised its discretion in this matter.

*Id.* at 527, at *5. On the matter of disqualification, the court held,

Finally, the plaintiffs' claim that Judge Lawson should have recused in this matter is so blatantly without merit as to warrant no further discussion.

*Ibid.*

## II.

The magistrate judge relied on this Court's August 15, 2008 opinion in suggesting that "an award of reasonable attorney fees to the Defendants is plainly authorized by 17 U.S.C. § 505, and that it is fully warranted by the facts and circumstances of record in this action." R & R at 881–82. After recounting the lengthy history of litigation misconduct on the part of the plaintiffs' attorney Gregory Reed, the magistrate judge also concluded that the case was "a perfect example of a circumstance warranting the imposition of an award of costs, expenses and attorneys' fees under 28 U.S.C. § 1927." *Id.* at 883. However, Judge Scheer held that Ms. Hammonds did not commit similar acts of "misconduct and obfuscation," was not "complicit[ ] in the concealment or alteration of any evidence in the case," and therefore did not deserve to bear responsibility for the plaintiffs' attorney's fees either under the Copyright Act or 28 U.S.C. § 1927. *Id.* at 883.

In applying the lodestar method for calculating the attorney's fees, Judge Scheer was satisfied that the 2,257.96 hours of legal work spent collectively by the five law firms representing various defendants was reasonable, with some listed exceptions, given that the case contained forty-three substantive motions (thirty-one of which were filed by the plaintiffs, with nine of them posttrial), 319 docket entries, lasted thirty-three months, and considering that the defendants prevailed on all of the twelve motions that they filed. The magis-

trate judge then found that, based on the 2003 State Bar of Michigan report "Economics of Law Practice" and the 2007 study conducted by the American Intellectual Property Law Association, "a reasonable hourly rate for services rendered in this intellectual property case would be $330.00 for partner level practitioners, $250.00 for senior associate level attorneys, ... $150.00 for junior associates (less than five years experience)," and $100.00 for non-attorney search assistants. R & R at 888.

The Magistrate Judge then adjusted various defendants' requests for attorney's fees accordingly. With respect to defendants The Island Def Jam Music Group, a division of UMG Recordings, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp., and Curtis Jackson (collectively referred to as "Universal Defendants"), Judge Scheer applied the rates discussed above to the hours expended by various attorneys from the Dickinson Wright law firm (who represented the Universal Defendants). The Universal Defendants state that the following attorneys from the firm worked on the matter, along with six non-lawyer assistants:

| | |
|---|---|
| Daniel D. Quick, partner | 251.3 hours |
| Michael Socha, senior associate | 571 hours |
| Kari Low, junior associate | 66.5 hours |
| Patrick Green, junior associate | 48.5 hours |

By using the rates listed above, Judge Scheer arrived at the result of $229,578 (instead of $233,188 requested by the Universal Defendants).

With respect to defendant EMI April Music, Inc., represented by the Butzel Long law firm, Judge Scheer was satisfied generally with the number of hours billed, but he suggested reducing the hours by 6.7 hours that the two firm attorneys (Michael Huget and John Blattner) billed for performing work on appellate issues. Judge Scheer believed that compensation for this work should be addressed at the conclu-

sion of appellate proceedings. Using the partner rate for Mr. Huget and Ms. Swedlow (Swedlow became a partner in January 2008; before that she was a senior associate), a senior-associate rate for attorneys Carol Romej and Christopher Taylor, and a junior-associate rate for attorneys Zachary Moen and John Blattner, Judge Scheer calculated the total of $225,720 for the EMI April Music, Inc.'s attorneys.

Next, the magistrate judge addressed the request for attorney's fees by counsel for defendant Justin Combs Publishing (JCP). JCP was initially represented by John William Martin, Jr. of Plunkett Cooney, P.C., who expended 195.8 hours at the rate of $325 per hour. Plunkett Cooney was JCP's counsel of record from August 4, 2005 through August 9, 2007. Although Plunkett Cooney submitted itemized billing for 195.8 hours of time expended by Martin, 1.6 hours of time expended by Martin's associate Jennifer Damico, and an additional one hour expended by non-attorney Kelly Klimmek, totaling some $64,099, Martin's supplemental declaration requests only $35,000, $1,545.67 of which represents billed expenses. The magistrate judge concluded that Martin's request was "fully justified by the work performed," even opining that the "work performed [by Martin] exceeds that value," *id.* at 890 & n. 7, and awarded $33,454.33 against the plaintiffs and attorney Reed, to be recovered jointly and severally.

However, Judge Scheer denied the attorney's fees requested by Johnathan D. Davis and his associate Thomas M. McCaffrey, who claim to have been the "primary contact with ... [JSP] and served as the conduit between counsel of record for JCP ...." *Id.* at 890. Judge Scheer was troubled by the fact that Johnathan D. Davis, P.C. was never an attorney of record. Instead, on August 9, 2007, John W. Martin,

Jr. withdrew and Butzel Long took over JCP's representation. Further, JCP and EMI filed a stipulation for the substitution of attorneys, which declared that they had "mutually decided to proceed with one attorney [Butzel Long] to represent both parties' interests." *See* dkt. # 207. As outlined earlier, the magistrate judge recommended that Butzel Long be fully reimbursed for its representation of both EMI April Music and JCP. Because Judge Scheer was not persuaded that Davis's services as an intermediary between JSP and its counsel were necessary, he recommended disallowing an award of attorney's fees in his favor. In denying the fees, the magistrate judge also relied on unsatisfactory billing descriptions and the fact that significant portions of the attorney time billed by the Davis firm relate directly to efforts on Mr. Martin's part to secure payment of his billings and to Mr. Davis's efforts in securing the substitution of Butzel Long as counsel for JSP.

Judge Scheer next discussed the request for attorney's fees from attorneys for Salaam Nassar and Soo Soo's Sweet Swisher Music, Leslie C. Schefman and his summer law clerk. Judge Scheer found that Mr. Schefman's own billing consisting of 128.8 hours billed at the hourly rate of $225 for a total of $28,980 is reasonable, but he rejected billing submitted by Mr. Schefman's law clerk. Judge Scheer suggested that the law clerk's billing was deficient in that (a) it did not explain the nature of tasks performed; (b) it switched from the hour-and-minutes billing format (as in "55:45") to the decimal system format (as in "1.7 hours"); and (c) the supplemental declaration altogether failed to describe the qualifications of the clerk.

Judge Scheer then proceeded to deny expert witness expenses for Ives R. Potrafka and Anthony Ricigliano, who were retained by EMI and the Universal Defendants in the course of litigation. Services

of Portrafka, who examined a zip disc obtained from the plaintiffs' counsel and performed the analysis of the Fharmacy computer, cost the two defendants $18,142.57; Ricigliano, who is a musicologist who compared the accused composition "Shot Down" with the plaintiffs' work "ESS Beats," cost the defendants $10,325. Although the magistrate judge denied the award of these fees against the plaintiffs under 17 U.S.C. § 505, siding with the majority of circuits that hold that the Copyright Act limits recovery to only taxable costs listed in 28 U.S.C. §§ 1821, 1920, he recommended that the defendants recover these costs from attorney Reed himself as a sanction under 28 U.S.C. § 1927. Judge Scheer concluded that these reports were necessary for the defendants toward off the "highly questionable evidence proffered by attorney Reed in support of his clients' copyright claims." R & R at 894.

The magistrate judge denied the request for recovery of computer billing costs, which is the single largest category of expenses sought by the defendants apart from the expert witness costs. Judge viewed these expenses as part of the attorney's fees and concluded that the defendants are not entitled to recover these expenses in addition to the attorney's fees. Nor was the magistrate judge sympathetic to the defendants' request for recovery of such expenses as copying, filing fees, telephone and facsimile charges, delivery expenses and service supplies. Judge Scheer concluded that, to the extent these fees are not recoverable under 28 U.S.C. § 1920 (which must be pursued under E.D. Mich. LR 54.1 and the Bill of Costs Handbook adopted by the Court), these expenses are subsumed within the overhead component of each particular attorney's hourly billing rate and are not recoverable. Judge Scheer directed the defendants to move for recovery of their court costs un-

der Fed.R.Civ.P. 54(d) and the Local Rules within 28 days after the entry of judgment and recommended that each moving defendant "recover such costs as may be taxed by the clerk in accordance with that procedure." R & R at 895.

Finally, the magistrate judge addressed and rejected some of the arguments made by the plaintiffs against the award of attorney's fees and costs. Judge Scheer rejected the plaintiffs' accusations that the defendants' joint supplemental memorandum is untimely or deficient because it is not supported by an affidavit from each attorney who participated in the defense. The magistrate judge also rejected the plaintiffs' argument that EMI April Music, Inc. is not entitled to an attorney's fee award because their own counsel's misconduct vexatiously multiplied the proceedings. The magistrate judge viewed this argument foreclosed by this Court's consideration of the parties' respective motions for sanctions. Nor did the magistrate judge credit the plaintiffs' assertion that the amount of the plaintiffs' attorney's fees is excessive. In rejecting this assertion, Judge Scheer found it significant that just twenty-two months into this litigation, Mr. Reed's own fees exceeded $160,000.

In total, Judge Scheer recommended an award of $546,199.89 in attorney's fees and costs, allocated as follows:

| DEFENDANTS | RECOMMENDED RECOVERY |
| --- | --- |
| Universal Defendants (The Island Def Jam Music Group, a division of UMG Recording, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp., and Curtis Jackson) | $229,578.00 in attorney's fees against the plaintiff and Gregory J. Reed, jointly and severally |
| (represented by Dickinson Wright) | $14,233.78 in expert witness expenses against Gregory J. Reed personally |
| EMI April Music, Inc. | $225,720.00 in attorney's fees against the plaintiffs and Gregory J. Reed, jointly and severally |
| (represented by Butzel Long) | $14,233.78 in expert witness expenses against Gregory J. Reed personally |
| Janice Combs Publishing d/b/a Justin Combs Publishing (JSP) (represented by Plunkett Cooney, P.C. and then by Butzel Long; Johnathan D. Davis, P.C. does not recover anything) | $33,454.33 in attorney's fees against the plaintiffs and Gregory J. Reed, jointly and severally |
| Salaam Nassar and Soo Soo's Sweet Swisher Music (represented by Leslie C. Schefman) | $28,980.00 in attorney's fees against the plaintiffs and Gregory J. Reed, jointly and severally |
| All defendants | costs as may be taxed by the clerk in accordance with Fed.R.Civ.P. 54(d)(1) and E.D. Mich. LR 54.1 against the plaintiffs and Gregory J. Reed, jointly and severally |

## III.

The plaintiffs filed several objections to the report. Curiously, none of the parties, including the plaintiffs, challenged the magistrate judge's calculation of the reasonable hours or his determination that the suggested hourly rates were reasonable. Instead, the plaintiffs' objections focus on procedural issues and other matters already decided by this Court and affirmed on appeal.

■ Objections to a report and recommendation dealing with the post judgment motion for attorney's fees and costs are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Likewise, the failure to object to the magistrate judge's report releases the Court from its duty to inde-

pendently review the motion. *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir.2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995). " '[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings ... believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380). "[T]he failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir.2004).

The plaintiffs' first objection challenges the authority of the magistrate judge to take the referral from this Court and issue his report and recommendation. The plaintiffs maintain that the post judgment referral of the motion for attorney's fees and costs to the magistrate judge exceeded the jurisdictional scope of 28 U.S.C. § 636(b)(1)(A). They cite *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993), and *Bennett v. General Caster Service of N. Gordon Co.*, 976 F.2d 995 (6th Cir.1992), for that proposition and reason that since the May 31, 2008 order granting summary judgment closed the case, the Court could not refer a post judgment matter to a magistrate judge.

Under 28 U.S.C. § 636(b)(1)(A), a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court," with the exception of certain dispositive matters, such as summary judgment motions and motions for injunctions. Although a magistrate judge does not have the authority to *determine* dispositive motions, he still may conduct hearings on these motions and submit to the district court "proposed findings of fact and recommendations for ... disposition" pursuant to 28 U.S.C. § 636(b)(1)(B) ("[A] judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."). In addition, a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3).

When a magistrate judge makes a recommendation, to be distinguished from a "determination," the parties are given an opportunity to file objections. *See* 28 U.S.C. § 636(b) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); Fed. R.Civ.P. 72(b). If objections are filed, the district judge makes "a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made.*" 28 U.S.C. § 636(b) (emphasis added). If a magistrate judge makes a "determination" of a matter, the district judge's review of it is circumscribed by the "clear error" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R.Civ.P. 72(a).

In *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir.1993), the case upon which the plaintiffs rely, the district judge referred a post judgment motion for sanctions under Federal Rule of Civil Procedure 11 to a magistrate judge for "hearing and determination," and then proceeded to

review the ensuing order under the clear error standard. The court of appeals held only that the district court should have reviewed the magistrate judge's findings *de novo*. The court did not hold that the referral was not authorized under the statute. Indeed, the Sixth Circuit has recognized that subsection 636(b)(3) authorizes referral to a magistrate judge of various post judgment matters that "reasonably should bear some relation to the specified duties" in the statute, such as the determination of damages. *Callier v. Gray*, 167 F.3d 977, 983 (6th Cir.1999) (quoting *Gomez v. United States*, 490 U.S. 858, 863–65, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989)). The *Massey* court acknowledged as much with respect to post judgment attorney's fee motions:

> [W]e have maintained that resolution of such motions is "dispositive of a claim." Fed.R.Civ.P. 72(b); *see Bennett*, 976 F.2d at 998 ("Nothing remained but to execute the judgment; therefore, [the magistrate judge's] purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a 'claim' of a party. *Because this was a dispositive matter, under Fed.R.Civ.P. 72(b), the magistrate judge should have issued a report and recommendation for de novo review by the district court.*") (footnotes omitted); *see also Insurance Co. of N. Am. v. Bath*, 968 F.2d 20 (10th Cir.1992). Consequently, we hold that the magistrate judge in the instant case did not have the authority to rule upon post-dismissal motions for sanctions, fees and costs as requested by the district court. *See Weatherby v. Secretary of HHS*, 654 F.Supp. 96, 97 (E.D.Mich.1987).

*Massey*, 7 F.3d at 510 (emphasis added).

More recently, the court of appeals has clarified that "[a] Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir.2005) (citing *Massey*, 7 F.3d at 510–11). "After being presented with the Magistrate Judge's report and recommendation, the district court must then conduct a de novo review of the findings and issue an order as it sees fit." *Ibid.*

■ In this case, the Court referred the matter to Magistrate Judge Scheer to conduct appropriate hearings and issue a report and recommendation. The plaintiffs availed themselves of the opportunity to file objections, and the matter is now under *de novo* review "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The procedure utilized by the Court is authorized under 28 U.S.C. § 636(b)(3). *See Callier*, 167 F.3d at 983. The plaintiffs' first objection, therefore, has no merit.

Many of the plaintiffs' other objections address matters that have been presented previously to the Court in the several post judgment motions the plaintiffs have filed, and these matters all have been decided adversely to the plaintiffs. For instance, the plaintiffs once again accuse the defendants of perpetrating fraud and argue that, as a result, the defendants are not entitled to attorney's fees. They base their accusations on a confirmation they received from the Copyright Office on November 12, 2009 that the plaintiffs had the CD of ESS Beats on file with the Copyright Office, which the defendants had secured on December 7, 2005. The plaintiffs take issue with the magistrate judge's conclusion that the plaintiffs' case was frivolous. They raise the issue of witness shopping concerning attorney Daniel Quick's decision to change an expert witness from Dr. Ferrara to Dr. Ricigliano. And they deny any wrongdoing on their part. In the first set of supplemental objections, the plaintiffs renew the argument that the report of Ives Potrafka was unsigned and

otherwise fails the *Daubert* standards and suggest that it was the defendants' attorneys who drafted the report. The second set of supplemental objections are merely a re-rehash of many of these same matters.

The Court need not address specifically any of these items, as they all have been considered and decided against the plaintiffs in the context of other motions in the case. The confirmation that the plaintiffs received from the Copyright Office (verifying that the defendants were provided a copy of the CD on file with the Copyright Office) does not provide new evidence for the Court to consider. The main point of contention was not that the defendants could not access the item on file with the Copyright Office; rather it related to the authenticity of electronic files that appear on the original CD sent to the Copyright Office—that is, the original CD that the defendants never received. As to the expert witness issue, the defendants explained previously that the substitution of Lawrence Ferrara for Mr. Ricigliano as an expert witness became necessary after the defendants learned during the deposition of R.J. Rice that Mr. Rice's counsel had initially contacted Dr. Ferrara about the song at issue. These objections are overruled.

Next, the plaintiffs argue that Magistrate Judge Scheer was mistaken when he stated that the defendants had to respond to nine post judgment motions filed by the plaintiffs. In fact, contend the plaintiffs, the defendants did not respond to any of these post judgment motions. According to the plaintiffs, the magistrate judge also acted improperly when he overlooked the defendants' violations of Rule 54 (which required submission of the cost application within 28 days from the date of the judgment) and allowed expenses for expert witnesses in the absence of formal invoices. The plaintiffs also complain that in 2005,

the defendants violated the Court's order directing them to obtain new counsel within sixty days, which in turn resulted in extension of proceedings by 145 days. The record does not substantiate the plaintiffs' arguments. The defendants responded to most of the post judgment motions. The attorney's fee motion was filed in accordance with Rule 54, after which it was adjudicated by the Court, which in turn resulted in the referral to the magistrate judge. The objection concerning substitution of an attorney has no bearing on the magistrate judge's recommendation.

The plaintiffs next challenge the report and recommendation based on the fact that not all attorneys involved in representation of the defendants submitted personal affidavits, as required by Fed.R.Civ.P. 54(d) and Local Rule 54.1.2. However, the record contains verification of the hours expended by the various law firms and declarations are filed by lead counsel. Local Rule 54.1.2 requires only an "affidavit of counsel,"—most frequently, a supervising attorney—which was provided in this case. *See also FTSS Korea v. First Technology Safety Sys., Inc.,* 254 F.R.D. 78, 81 (E.D.Mich.2008) (awarding attorney's fees on the basis of counsel's billing statement, notwithstanding the absence of any affidavits).

The plaintiffs next object to the portion of the magistrate judge's report that directs the defendants to submit a bill of costs in accordance with the Bill of Costs Handbook. According to the plaintiffs, the defendants' requests for costs is untimely (under Local Rule 54. 1, such request must be brought within 28 days from the date of the judgment) and should not be authorized now. The plaintiffs also maintain that pursuant to the handbook, expert fees are not recoverable in the absence of trial; transcript costs are not recoverable unless ordered by the Court;

and costs of copying and distributing CDs are not recoverable. A related objection is that the defendants filed their joint supplemental memorandum late—five months after the April 14, 2008 deadline. The bill of costs issue can be decided by the Clerk if the defendants ever submit such a filing. The matter presently is not before the Court. The alleged tardiness of the defendants' supplemental submission is a procedural matter that should have been addressed to the magistrate judge. It has no bearing on the recommendation presently before the Court for review.

The plaintiffs object to an award of attorney's fees to Michael Socha and Bea Swedlow who allegedly questioned the plaintiffs' witness Rofael Jackson without the plaintiffs' counsel's permission. The Court finds no support for this claim in the record and overrules this objection.

Next, the plaintiffs attack sufficiency of the defendants' billing statements on the ground that the defendants failed to produce engagement letters, copies of joint defense agreements, and necessary documentation regarding costs. The plaintiffs also charge that the defendants engaged in block/excessive/double billing, included superfluous charges, and redacted certain entries so the plaintiffs and the Court cannot assess their reasonableness. The Court agrees with the magistrate judge that the information presented by the defendants is adequate and sufficiently verifiable to ascertain the reasonable time spent in the defense of the plaintiffs' claims under the lodestar method. That objection is overruled.

## IV.

The Court concludes that the magistrate judge properly determined the issues and his findings are amply supported by the record. The plaintiffs' objections lack merit and are overruled. The magistrate judge properly suggested the appropriate amounts of reasonable costs and expenses that the respective defendants should recover from the plaintiffs and their attorney, Gregory J. Reed, jointly and several, and against Mr. Reed separately, under the Copyright Act and 28 U.S.C. § 1927, and the Court adopts those recommendations as its own findings, in the absence of valid objections thereto by the plaintiffs. The magistrate judge recommended that no fees or expenses be awarded against attorney Stephanie Hammonds, and in the absence of objections from the defendants, the Court adopts that conclusion as its own as well.

Accordingly, the defendants' motion for attorney's fees and costs [dkt. # 252] is **GRANTED IN PART.**

It is further **ORDERED** that the plaintiff's objections to the report and recommendation [dkt. # s 321, 323, 326] are **OVERRULED.**

It is further **ORDERED** that the report and recommendation [dkt. # 320] is **ADOPTED.**

It is further **ORDERED** that the defendants shall have judgment against the plaintiffs and their counsel in the amount recommended by the magistrate judge.

## *REPORT AND RECOMMENDATION*

DONALD A. SCHEER, United States Magistrate Judge.

This matter is before the magistrate judge by Order of Reference for determination of the amount of attorneys fees, costs and expenses, if any, that should be awarded to the respective Defendants, and for determination of whether Plaintiffs' attorneys ought to be personally accountable for any or all of the fees and expenses which may be awarded. The parties appeared for hearing on January 9, 2009. The matter was taken under advisement, pending my review of the record.

Plaintiffs' filed their Complaint on May 31, 2005. They alleged copyright infringement with respect to a musical composition entitled "Shot Down." They claimed that the work incorporated a rhythm or beat ("ESS Beats") developed by Plaintiff Rivers and assigned to Plaintiffs Fharmacy Records Production Co. and Fharm I Publishing Co. In addition to their claim under the Copyright Act, Plaintiffs alleged unfair competition and intentional interference with contractual and business relationships. Those state law claims were dismissed with prejudice, as frivolous, in an Order of January 20, 2006, 2006 WL 156669. After thirty-four (34) months of exceptionally contentious litigation,[1] the district judge granted the Defendants' Motion for Summary Judgment. The court further found that Plaintiffs or their representatives had "altered, lost and destroyed evidence in the case," such that dismissal under the court's inherent authority to address such abuses was warranted. (Docket Entry 248, p. 2). Judgment for Defendants was entered on the same day. (Docket Entry 249).

■ On April 14, 2008, Defendants filed their Motion for Attorney Fees and Costs under 17 U.S.C. § 505, 28 U.S.C. § 1927 and the court's inherent authority. (Docket Entry 252). On August 15, 2008, the court entered an Opinion and Order addressing the Defendants' Motion. The district judge noted that the Copyright Act authorizes an award of costs and reasonable attorney fees to a prevailing party in an action brought under the statute. 17 U.S.C. § 505. Such an award is a matter within the court's discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The court also observed that an award of fees and costs under 28 U.S.C. § 1927 may be imposed against an attorney whose conduct is unreasonable, and who multiplies proceed-

ings vexatiously. The statute provides that a court may hold the parties and their counsel jointly and severally liable. See *Royal Oak Entertainment, LLC v. City of Royal Oak*, 486 F.Supp.2d 675, 679 (E.D.Mich.2007).

The court referred the Defendants' Attorney Fee Motion to the undersigned magistrate judge "for the purpose of determining the amount of attorney fees, costs, expenses, if any, that should be awarded to the respective Defendants, and to determine further whether Plaintiffs' attorneys ought to be personally accountable for any or all of those fees and expenses ...." (Order, 572 F.Supp.2d at 882).

### Defendants' Entitlement to Attorney Fees Under the Copyright Act

■ In granting summary judgment for the Defendants, the court found that Plaintiffs had not produced evidence establishing that the accused work, "Shot Down," contains a direct or indirect "recapture [of] the actual sounds fixed in the recording" Plaintiff Rivers claimed to have made, or a rearrangement of "the actual sounds fixed in [Rivers'] sound recording." That finding precluded Plaintiffs' recovery on their sole remaining theory of liability, a claim of unlawful sampling under 17 U.S.C. § 114(b). The March 31, 2008 Order of Judgment was thus entered on the merits, and incontestably rendered Defendants the prevailing parties in the action. Title 17 U.S.C. § 505 provides as follows:

> In any civil action under this Title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this Title, the court may also award a reasonable attorneys fee to the prevailing party as part of the costs.

1. The docket sheet reflects 319 entries, to date, and consumes 58 pages.

An award of attorney fees under the Copyright Act is a matter of the court's discretion, but it is clear that prevailing plaintiffs and prevailing defendants must be treated alike in the exercise of that discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Our circuit has held that the grant of fees, while a matter of discretion, is "the rule rather than the exception." *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir.2007) (internal quotation marks omitted).

The Supreme Court, in *Fogerty*, identified non-exclusive factors which may serve to inform the exercise of judicial discretion. Those include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n. 19, 114 S.Ct. 1023. No single factor is necessary or dispositive, and they may be considered in conjunction with other factors a court may find significant in a particular case. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir.2004).

■ In his Opinion and Order of August 15, 2008, the district judge determined that the *Fogerty* factors, and the need to advance considerations of compensation and deterrence, "all weigh heavily in favor of costs and fees under § 505." The court made specific reference to the findings stated in his Order Granting Defendants' Motion for Summary Judgment that Plaintiffs and their attorneys had engaged in "disturbing conduct" regarding "the manipulation and destruction of evidence in the case ...." A fulsome discussion of a pattern of questionable conduct by Plaintiffs and their attorneys comprises a substantial portion of the court's 48 page opinion, and need not be recounted in detail here. Suffice it to say that the court found

Plaintiffs and their counsel to have engaged in the following obstructive conduct:

a. Mr. Reed lost the "original" CD purportedly containing Rivers' creation;

b. Rivers' zip disc was intentionally wiped of data;

c. Rivers lost an audio tape recording allegedly containing Nassar's confession;

d. The Fharmacy computer allegedly used in 2001, and which purportedly contained a "dumped" copy of "EssBeats" did not even exist until 2003;

e. The computer files that appeared on the Fharmacy computer were intentionally backdated;

f. The 2001 assignment document referenced certain Fharmacy entities that were not even formed until 2004;

g. The original assignment documents were lost;

h. The computer that allegedly was used to draft those documents was discarded; and

i. The R.J. Rice hard drive containing the file dates for another purported version of "Ess Beats" could not be verified.

(Opinion and Order, Docket Entry 248, p. 44). The district judge noted that the foregoing list did not include "material inconsistencies in the Plaintiffs' testimony, late disclosure of evidence, misrepresentation of evidence and prevarications by Mr. Reed in his representations to opposing counsel." (*Id.*). All of those matters were considered by the court in making the determination that a grant of summary judgment to the Defendants was warranted. I am not at liberty to challenge those findings. Even if I was free to alter the district judge's conclusions, I find no basis in my review of the record for doing so. I am satisfied that an award of reasonable attorney fees to the Defendants is plainly authorized by 17 U.S.C. § 505, and that it

is fully warranted by the facts and circumstances of record in this action.

### Defendants' Entitlement to Attorney Fees Pursuant to 28 U.S.C. § 1927

Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys fees reasonably incurred because of such conduct.

Title 28 U.S.C. § 1927. Our circuit has held that, as it is penal in nature, the statute is to be strictly construed. *United States v. Ross,* 535 F.2d 346 (6th Cir.1976). "[T]he application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Holmes v. City of Massillon,* 78 F.3d 1041, 1049 (6th Cir.1996) (quoting *In Re: Ruben,* 825 F.2d 977, 984 (6th Cir.1987), *cert. denied,* 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)). Defendants maintain that the requirements of the statute, as interpreted in the case law, are satisfied in this case, at least as to Mr. Gregory Reed, Plaintiffs' lead counsel. Defendants' Motion for Attorney Fees and Costs catalogs a number of actions attributed to Plaintiffs' counsel by the district judge in his Opinion and Order Granting Defendants' Motion for Summary Judgment. In addition to "losing" the original CD purportedly containing Rivers' work, the court found that Mr. Reed had engaged in the following conduct:

a. Supplying incomplete and evasive answers to initial written discovery (Opinion and Order, Docket Entry 248, p. 4);

b. Failing to timely produce Plaintiffs' electronic and other evidence not previously disclosed in written discovery, but revealed during Plaintiffs' deposition (*Id.,* p. 15);

c. Failing to timely disclose the R.J. Rice evidence Plaintiffs intended to rely upon at trial (*Id.,* p. 16);

d. Obliging Defendants to file a Motion to Reopen Discovery to Compel Production and Testing of Previously Undisclosed Evidence (*Id.,* p. 17);

e. Thwarting Defendants' request for inspection and testing of Plaintiffs' electronic data (*Id.*);

f. Providing a false declaration concerning his receipt of the Seaton CD and accounting for its loss (*Id.,* p. 18–19);

g. Retaining a putative expert, Bernard Terry, who intentionally backdated the files on the Fharmacy computer (*Id.,* p. 21);

i. "Losing" the original (and inherently dubious) assignment documents (*Id.,* p. 23);

j. Preparing an Affidavit for R.J. Rice stating that Rice believed "Ess Beats" and "Shot Down" to be identical, only to have Rice testify on deposition that he never heard "Ess Beats" before (*Id.,* p. 26–27);

k. Holding out Bernard Terry as a computer forensic examiner when Terry had no such expertise, and drafting a declaration and "expert reports" in an effort to obfuscate that fact (*Id.,* p. 31–32);

l. Filing a motion to exclude Defendants expert that "has no merit" and was "a vexatious response to Defendants' motion" and that "plagiarized" Defendants' motion (*Id.,* p. 46); and

m. Filing a tit-for-tat, meritless and plagiarized Motion for Sanctions against Defendants (*Id.*).

■ Plaintiffs' failure to disclose basic evidence in support of their copyright claims is simply inexcusable. Fed.R.Civ.P. 26(a)(1) requires that a party identify persons "likely to have discoverable information—along with the subjects of that information—that the disclosing party may use" to support its claims. Further, the rule requires production of "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims ...." The originally assigned district judge entered an Order that the required disclosures be completed by March 10, 2006.[2] The record reflects, however, that the court's early effort secure compliance with the rule had no salutary effect on Mr. Reed. On the contrary, his clients' written discovery responses were evasive, inaccurate and non-responsive. Mr. Reed embarked upon a lengthy and unremitting campaign of deception, which included the concealment of evidence; production of suspicious documents and things (CD, assignment agreements, Rice declaration); spoiled or fabricated exhibits (zip disc, backdated computer files); lost evidence (CD; original assignments, taped telephone conversation); and pitifully unqualified "expert" opinion, all as described in great detail by the district judge in his grant of summary judgment to Defendants. (Opinion and Order, Docket Entry 248). In the last analysis, despite his substantial effort, he was unable to present a case sufficient to withstand summary judgment. I am fully persuaded that Mr. Reeds' deceptive and indefensible manipulation of the purported evidence in this case is responsible for the entirety of the time and effort Defendants were obliged to expend in their defense of a highly questionable, if not frivolous, copyright claim. Had an honest and competent evaluation of the evidence been undertaken prior to the filing of the Complaint, it is likely that no court action would have been filed. I view this case as a perfect example of a circumstance warranting the imposition of an award of costs, expenses and attorneys' fees under 28 U.S.C. § 1927.

The moving Defendants seek recovery of their attorneys' fees, costs and expenses against Mr. Reed's co-counsel, Stephanie Hammonds, as well. They maintain that, as co-counsel, Mr. Reed and Ms. Hammonds should be held jointly and severally responsible for Defendants' expenditures in defending the case. Movants correctly observe that Ms. Hammonds signed most of the pleadings and documents in the case, including Plaintiffs' Motion for Summary Judgment, their Motion for Sanctions and their Motion to Exclude Mr. Portrafka's Expert Opinions. Nonetheless, I am persuaded from my review of the record that the specific acts of misconduct and obfuscation which persuaded the court to enter Judgment for the defense are attributable directly to Mr. Reed. Indeed, the Defendants' motion cites no instance of clear misconduct on the part of Ms. Hammonds. There is no direct evidence of her complicity in the concealment or alteration of any evidence in the case. I would note further that she was not counsel of record for Plaintiffs at the time the original Complaint was filed. Only Mr. Reed was responsible for the formulation of the initial pleadings, and the assertion of the two frivolous state law claims for which he was sanctioned by Judge Roberts.

2. It is worthy of note that the same judge imposed § 1927 sanctions against Mr. Reed for his inclusion of two frivolous state law claims in his Complaint, and his effort to defend that action with a "nonsensical argument" based on supplemental jurisdiction, despite the fact that he had recently failed in a similar argument before the same judge. (Order, Docket Entry 56).

While Ms. Hammonds did subsequently assume an active role as counsel in the case, I am satisfied that neither the Copyright Act nor 28 U.S.C. § 1927 was intended to discourage or punish zealous, but unsuccessful, advocacy. In the absence of a showing of specific acts of misconduct on her part, I conclude that no monetary sanction should be imposed against attorney Hammonds.

As noted by the court in his August 15, 2008 Opinion and Order referring the instant motion to the magistrate judge, the proper method of determining the amount of attorneys' fees to be imposed under fee shifting statutes is well recognized.

> A starting point is to calculate 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. Next, the resulting sum should be adjusted to reflect the 'result obtained.'

*Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (calculation of attorney fees under 42 U.S.C. § 1988)). Our circuit has adopted the lodestar approach for calculations under the Copyright Act. See *Ametex Fabrics, Inc. v. Custom Interiors and Supply Co.*, 162 F.3d 1161, 1998 WL 553046, *3 (6th Cir., August 11, 1998) (table case); see also *Bridgeport Music, Inc. v. Lorenzo*, 255 F.Supp.2d 795, 800–01 (M.D.Tenn.2003), aff'd sub nom, *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir.2004). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933; see also *Dubay v. Wells*, 442 F.Supp.2d 404, 415–16 (E.D.Mich.2006); *Mehney–Egan v. Mendoza*, 130 F.Supp.2d 884, 885 (E.D.Mich.2001).

For purposes of the lodestar calculation, a reasonable hourly rate for attorney fees is determined by reference to the market place. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). The court requires more than a mere affidavit that the attorney claimant charges a particular rate. Rather, the claimant must provide evidence of the prevailing rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). A higher level of attorney experience warrants the award of a higher fee. *Id.* A reasonable attorney fee also includes reasonable compensation for paralegals and law clerks, whose work should generally be compensated at the rates at which it is billed to clients. *Jenkins, supra.* While some courts apply higher hourly rates to in court work than out of court services, most apply a flat rate for all work by a particular attorney. See *In re: Meese*, 907 F.2d 1192 (D.C.Cir. 1990).

In calculating the fee to be imposed, the court must multiply the appropriate hourly rate by the number of hours reasonably expended in rendering the service. Hours attributable to excessive, redundant or otherwise unnecessary work must be excluded. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, courts have reduced fee awards where the requested fee reflected duplication of services, excessive time for simply or routine tasks, the use of too many attorneys, excessive conferencing, unnecessary consultant work, or the performance of clerical tasks by legal professionals. Hirsch and Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* (2nd Edition), Federal Judicial Center 2005, p. 26. Nonetheless, "courts

have held that it is improper to engage in an 'ex post facto determination of whether attorney hours were necessary to the relief obtained.' The issue 'is not whether hindsight vindicates an attorneys' time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* at 29 (citing *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir.1992) *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1973); *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir.1990)).

 It is the fee claimant's obligation to provide sufficient documentation of the hours spent, as well as of the market rate. Inadequate documentation is grounds for a reduction of the award. *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. A diary or journal is not essential, but most courts prefer contemporaneous fee records as documentation of the time expended.

In addressing Defendants' Motion for Attorney Fees in his Opinion and Order of August 15, 2008, 572 F.Supp.2d 869 (E.D.Mich.2008), the district judge determined that the exhibits supporting the amounts requested did not furnish the level of detail necessary to determine the reasonableness of the fee requests. Specifically, the court found that the supporting documents did not "allow the court to assess the amount of time spent on specific tasks by individual lawyers, and [did] not furnish sufficient detail to permit a reasoned challenge by Plaintiffs or their attorneys." The issue was thereupon referred to the magistrate judge for hearing to "determine the amount of attorney fees, costs and expenses, if any, that should be awarded to the respective Defendants, and to determine further whether the Plaintiffs' attorneys ought to be personally ac-

countable for any or all of those fees and expenses...." (*Id.* at 882). Thereafter, Defendants filed a Joint Supplemental Memorandum, supported by Attorney Declarations and billing records. (Docket Entries 279–284). Plaintiffs filed their Response and supporting exhibits on January 7 and 8, 2009. (Docket Entries 315–317). The parties appeared for hearing on January 9, 2009, and the matter was taken under advisement.

### Defendants' Requests

Defendants' Joint Motion, as supplemented, seeks an award of $605,773.16, jointly and severally, against Plaintiffs and their counsel of record. Dickenson Wright PLLC, the law firm representing the Island Deaf Jam Music Group, a Division of UMG Recordings, Inc.; Universal Music Publishing, Inc.; Universal Music and Video Distribution Corp. ("Universal Defendants") and Curtis Jackson billed attorney fees of $237,303.50, together with expert fees in the amount of $14,273.28 and expenses in the amount of $12,407.57.[3] Butzel Long Davis, P.C., the attorneys for Defendant EMI April Music, Inc. ("EMI"), and later Defendant Janice Combs Publishing ("JPC"), charged attorney fees in the amount of $227,216.50, together with expert witness fees totalling $14,233.78 and costs amounting to $9,200.03. Plunkett Cooney PLC, also counsel for Defendant JPC seeks an attorney fee award of $35,000.00 (inclusive of $1,545.67 in expenses). The firm of Jonathan D. Davis, P.C. also counsel for JCP seeks attorney fees in the amount of $24,324.00, paralegal expenses of $900.00 and expenses in the sum of $142.75. Leslie C. Schefman, Esq., counsel for Defendants Salim Nassar and Soo Soo's Sweet Swisher Music, seeks attorney fees in the sum of $30,771.75. All

---

**3.** The attorney fee request includes $4,115.50 previously awarded to the Universal Defendants in this case, pursuant to § 1927. Any additional fees awarded should not include this amount.

of the attorney fee and expense requests were combined in Defendants' Joint Motion for Attorney Fees and Costs (Docket Entry 252).

### Lodestar Analysis Hours Reasonably Expended

It is obvious that the moving Defendants are seeking a very large award of fees and costs. They maintain, however, that the attorneys' fees claimed are reasonable because: 1) the number of hours spent defending their respective clients was necessitated by the "egregious misconduct" of Plaintiffs and their counsel; 2) defense counsel did not spend excessive, redundant, or unnecessary hours defending their clients; and 3) defense counsels' hourly rates are consistent with the prevailing fees in Detroit for similar services by lawyers of comparable skill, expertise and reputation. Movants further assert that their claims for costs are reasonable because the amounts reflect customary charges for services and materials utilized in litigation.

■■■ In awarding a reasonable fee, the court should consider the time and labor required, the novelty and difficulty of the litigation, and the experience, reputation and ability of the attorneys. *Princeton Univ. Press v. Smith,* 869 F.Supp. 521, 523 (E.D.Mich.1994) citing *Kelley v. Metro. Cty. Bd. of Ed.,* 773 F.2d 677, 683 (6th Cir.1983). The level of success achieved is also a relevant factor in determining the proper amount of fees. *Id.* The fee requests in the instant case are for services rendered in the defense of copyright claims against eight separate Defendants (out of sixteen Defendants originally sued) over a period of nearly three years. The time records presented confirm the nature of the services rendered, as set out in their supplemental brief at pages 8–9, including:

- review and analysis of Plaintiffs' Complaint;
- formulation and filing of respective answers;
- legal research regarding Plaintiffs' claims;
- witness interviews;
- research and filing of partial motion to dismiss complaint;
- preparation of Rule 26(a) disclosures;
- preparation of Rule 26(f) plan;
- preparation for and attendance at Rule 16 conference;6
- drafting of discovery requests to Plaintiffs;
- drafting of Defendants' respective responses to Plaintiffs' discovery requests;
- assembly, review and production of documents on behalf of Defendants;
- review and analysis of documents produced by the various parties in discovery;
- drafting of a protective order;
- preparation for and conduct of depositions of the parties;
- review and analysis of Plaintiffs' expert reports;
- retention of and consultation with defense experts;
- research, drafting and prosecution of defense Motion for Summary Judgment;
- research and defense of Plaintiffs' Motion for Summary Judgment;
- consultation with counsel for co-Defendants; and
- consultation with respective client Defendants.

Movants further note that they were required to expend much of their time and effort responding to the various acts of misconduct by Plaintiffs and their counsel. The extent of that misconduct was such

that the court characterized it as a "campaign of fraud," deserving of dismissal of the Complaint, with prejudice.

Movants assert that they have not spent excessive, redundant or unnecessary hours in defending their clients. They note that the five law firms, whenever possible, coordinated their effort to avoid duplication of work and unnecessary costs "by designating one of the Defendants' attorneys to take the lead in researching and drafting the initial versions of written motions and responses on behalf of all Defendants." (Joint Supplemental Memorandum, p. 11). Upon completion of the initial draft, each Defendants' attorney would participate only in the revision and analysis necessary to ensure that the individual client's position was asserted. As examples of that process, the memorandum declares that counsel for the Universal Defendants and Jackson performed the preliminary research and drafting for the Motions to Compel Discovery and Forensic Testing (Docket Entries 127 and 155), Defendants' Motion for Summary Judgment (Docket Entry 206) and Defendants' Motion for Sanctions (Docket Entry 185). In similar fashion, counsel for EMI and JCP did the initial research and drafting for Defendants' Joint Motion to Strike/Exclude Plaintiffs' Expert (Docket Entry 204) and Defendants' Opposition to Plaintiffs' Motion to Exclude Defendants' Expert (Docket Entry 218). The same cooperative process was employed by Defendants in responding to the majority of Plaintiffs' nine post judgment motions.

The Joint Memorandum also declares that Defendants endeavored to avoid excessive and unnecessary costs by delegation of work to junior members of the firms, so that the work would be billed at lower rates. (Joint Supplement Memo, p. 12; Quick Supplemental Declaration, paragraph 12; Huget Supplemental Declaration, paragraph 12; Shefman Supplemental Declaration, paragraph 10). My review of the time records confirms the movants' representations.

Plaintiffs' Joint Motion for Sanctions (Docket Entry 185) is a good example. The 50 page motion and brief, supported by 34 exhibits totaling 339 pages, and an index of unpublished authority (Docket Entry 186) was filed jointly by all eight moving Defendants. The vast majority of the research on the issues of fabrication and spoliation of evidence, however, was performed by a single associate member of Dickinson Wright PLLC. (Supplemental Declaration of Daniel D. Quick, Esq., Docket Entry 283-6, pps. 44–51; 52–54; 64–67). By my count, the underlying research consumed 55.7 attorney hours. While that is a substantial time investment, the issues addressed were central to the disposition of the case, and the court's findings with respect to the conduct of Plaintiffs' lead counsel formed one of the two alternative bases for dismissal of the case with prejudice. (Opinion and Order, Docket Entry 248).

> [C]ourts have held that it is improper to engage in an "ex post facto determination of whether attorney hours were necessary to the relief obtained." The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."

Hirsch and Sheehey, *Awarding Attorneys Fees and Managing Fee Litigation* (2nd Edition), Federal Judicial Center 2005, p. 29 (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3rd Cir.1993)). Under the facts of the case at bar, I would be hard pressed to determine that the time invested in a fully successful dispositive motion was unwarranted. In my view, the same holds true

of the majority of 2,257.96 attorney hours invested in the defense of the eight fee claimants. The docket sheet for this case reflects 43 substantive motions, 31 of which were filed by the Plaintiffs (including 9 post judgment motions). The Defendants responses to those motions were almost uniformly successful. Similarly, they prevailed almost entirely on the 12 substantive motions filed on their behalf. I am satisfied that, for the most part, the hours invested in their fully successful defense of this action were reasonable, and that they should be compensated for the financial burden of that effort.

### Reasonable Hourly Rate

■ The determination of a reasonable hourly rate requires an examination of the relevant marketplace. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). In their Joint Supplemental Memorandum (Docket Entry 279), Defendants submitted excerpts from two marketplace surveys. The first of those was a 2003 State Bar of Michigan report entitled "Economics of Law Practice." That report, based upon survey responses from Michigan practitioners, reflected a median hourly rate of $260.00 for practitioners of intellectual property law. The hourly rate for Intellectual Property lawyers at the 75th percentile was $328.00 per hour. (Exhibit B to Defendants' Joint Memorandum). Defendants also submitted excerpts from a study conducted by the American Intellectual Property Law Association ("AIPLA") in 2007. That study reflected a mean (average) hourly rate of $298.00 for partner level intellectual property practitioners in the "other central" region, which includes Michigan. The third quartile rate for partners was determined to be $330.00 per hour. The

median hourly rate for associate level intellectual property practitioners was $190.00, and the third quartile rate was $248.00. (Exhibit D to Defendants' Joint Memorandum).

Defendants' Joint Supplemental Memo reflects that attorneys Daniel Quick, Jay Michael Huget, Jonathan Davis and John W. Martin, Jr. are (and were throughout this litigation) partner level practitioners with substantial intellectual property experience. Attorneys Michael Socha, Debra Swedlow and Thomas McCaffrey were senior associate level practitioners. Ms. Swedlow became a shareholder in the Butzel Long Intellectual Property Group in January 2008. Based upon the survey information submitted, I am satisfied that a reasonable hourly rate for services rendered in this intellectual property case would be $330.00 for partner level practitioners, $250.00 for senior associate level attorneys, and $150.00 for junior associates (less than five years experience).[4] I find that a reasonable hourly rate for non-attorney research assistants is $100.00 per hour. I consider any hour billed at or below those rates to be reasonable, and will adjust any hour billed at a higher rate to be excessive to the extent it exceeds the respective reasonable hourly charge.

### Attorney Fee Calculations

**A. *The Universal Defendants and Curtis Jackson (Represented by Dickinson Wright PLLC)***

■ Defendants The Island Def Jam Music Group, a division of UMG Recordings, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp. and Curtis Jackson (collectively "Universal Defendants") seek a judgment for $233,188.00 in attorneys fees[5] together

---

4. The 2003 Michigan Bar Survey reflects $150.00/hour for junior associates as both the median and 75th percentile rates.

5. This request does not include the $4,115.50 in sanctions imposed upon attorney Reed by Judge Roberts on August 21, 2006.

with expert witness fees in the sum of $14,273.28 and other expenses and costs in the amount of $12,075.57. The Supplemental Declaration of Daniel D. Quick, lead counsel for the Universal Defendants, includes the fee statements issued by Dickinson Wright PLLC. Those statements reflect the hours expended in defending the case. 251.3 hours were expended by Mr. Quick, 571 hours by senior associate Michael Socha, and 66.5 hours and 48.5 hours by junior associates Kari Low and Patrick Green, respectively. A relatively small number of hours were billed for the work of non-attorney support personnel, including Michelle DiCarlo, Jan Bissett, Roger Mason, Mark Paliszewski, Barbara Adair and Barbara Bennett. I am satisfied that the total hours expended in the defense of the Universal Defendants was reasonable, in light of the extensive motion practice, most of which was necessitated by the conduct of Plaintiffs and their counsel. Accordingly, I have accepted the amount of attorney fees billed within the limits adopted as reasonable hourly rates for partner, senior associate, junior associate and non-attorney work, as set out at pages 17 and 18 of this report. By my calculation, the reasonable attorneys' fees incurred by the Universal Defendants totaled $229,578.00. I conclude that the Universal Defendants should recover a judgment in that amount against Plaintiffs and attorney Gregory J. Reed, jointly and severally.

**B.** *EMI April Music, Inc. (Represented by Butzel Long PLC)*

 Defendant EMI April Music, Inc. seeks attorney fees in the sum of $227,216.50, together with expert witness fees of $14,233.78 and costs in the amount of $9,200.03. The request is supported by Defendants' Joint Supplemental Memorandum and the Supplemental Declaration of J. Michael Huget, Vice–President of Butzel Long PLC and lead counsel for EMI. Exhibit D to Mr. Huget's Declaration contains copies of the Butzel Long invoices reflecting the attorney fees and expenses billed to EMI in the course of this action. The majority of that time was expended by Mr. Huget and Deborah Swedlow, who was a senior associate at Butzel Long until January 2008, at which time she became a shareholder in the Intellectual Property Group. Other Butzel Long attorneys contributed a small number of hours to the case. They include Carol Romej, Christopher Taylor, Zachary Moen and John Blattner. Mr. Huget's Declaration presents no biographical information with respect to the status of these later named attorneys with the firm. The billing rates quoted, as well as the registration numbers assigned to them in the Michigan Bar Directory, suggest that Romej and Taylor were, at least, senior associates, and that Moen and Blattner were junior associates. I have, therefore, imposed an hourly billing limit of $250.00 for Romej and Taylor, and $150.00 for Moen and Blattner. I have further imposed a billing limitation of $100.00 per hour for the work of non-attorney personnel, including Beth Kinnard and Marilyn Peterson.

As stated earlier in this Report, I am satisfied that the work hours reflected in the billing statements are reasonable in light of the record. I have, however, excluded time billed by attorneys Huget (3 hours) and Blattner (3.7 hours) for work on appellate issues. Such fees may be recovered at the conclusion of appellate proceedings.

Based upon my review, I find that Defendant EMI April Music, Inc. should recover a judgment against Plaintiffs and attorney Gregory J. Reed, jointly and severally, for attorneys' fees in the amount of $225,720.00.

**C. *Janice Combs Publishing dba Justin Combs Publishing (Represented by Plunkett Cooney PLC and Butzel Long PLC, beginning in August 2007, as well as Johnathan D. Davis, P.C.)***

 Defendant Justin Combs Publishing ("JCP") also seeks recovery of its attorney fees. The request is supported by the Supplemental Declarations of John William Martin, Jr. and Johnathan D. Davis. The record reflects that attorney Martin, of the law firm of Plunkett and Cooney, PC, filed an Answer and cross-claim [6] on behalf of JCP on August 4, 2005 (Docket Entry 37), and remained counsel of record for that Defendant until August 9, 2007 (Docket Entry 207), at which time the law firm of Butzel Long undertook the defense. Mr. Martin's Supplemental Declaration includes copies of invoices setting out the hours devoted to JCP's defense from January 25, 2005 until his withdrawal as counsel. Those records reflect 195.8 hours expended by Mr. Martin and billed at $325.00 per hour. The invoices further reflect the expenditure of 1.6 hours by Mr. Martin's associate, Jennifer Damico, and an additional hour by non-attorney Kelly Klimmek. The invoices further reflect the billing to JCP of $1,545.67 in "costs". Notwithstanding the fact that the invoices reflect $64,099.00 in professional services rendered, Mr. Martin's Supplemental Declaration requests an award of $35,000.00 (inclusive of the $1,545.67 in billed expenses). My review of the attorney time statements attached to the Declaration

persuades me that the attorney fee portion of Martin's request is fully justified by the work performed,[7] and I recommend that Defendant JCP recover $33,454.33 from Plaintiffs and attorney Reed, jointly and severally.

Defendant JCP also seeks to recover attorney fees billed to it by Johnathan D. Davis, P.C. That request is support by the Supplemental Declaration of Johnathan D. Davis, stating that he was the "primary contact with Defendant Justin Combs Publishing ("JCP") and served as the conduit between counsel of record for JCP and JCP." Attached to the Supplemental Declaration are billing records reflecting time expended by Mr. Davis and his associate, Thomas M. McCaffrey for the period from June 29, 2005 through April 1, 2008. The records indicate that a total of 82.9 hours were devoted to the representation of JCP, of which 44.1 hours were expended by Mr. Davis. The Supplemental Declaration seeks attorney fees in the amount of $24,324.00, together with paralegal expenses in the amount of $900.00 and costs in the sum of $142.75.

I am troubled by the Johnathan D. Davis, P.C. attorney fee request. At no time was that firm counsel of record for JCP in this action. The actual representation of that Defendant was undertaken by attorney John W. Martin Jr. until August 9, 2007, and thereafter by attorneys J. Michael Huget and Deborah J. Swedlow, of Butzel Long. That firm, of course, also represented Defendant EMI April Music,

---

**6.** The crossclaim asserted that JCP's co-Defendants should be liable to indemnify it for any damages to which Plaintiffs might be entitled from JCP.

**7.** That is not to say that every individual item billed was fully justified. Billings during the period from September 5, 2005 through September 22, 2005, for example, reveal multiple 0.2 hour expenditures ($65.00) for review and analysis of notices of service returns and at-

torney appearances. I view such charges as excessive. Nonetheless, the majority of charges appear appropriate. The invoices attached to the Declaration indicate that Plunkett Cooney remained unpaid for their services throughout Mr. Martin's tenure as counsel of record. The justification for his compromise request of $35,000.00 is not stated, but I am satisfied that the work performed exceeds that value.

Inc. ("EMI"). JCP and EMI filed a Stipulation for the Substitution of Attorneys on August 9, 2007. The Stipulation declared that they had "mutually decided to proceed with one attorney to represent both parties' interests." (Docket Entry 207). The hours expended by Butzel Long in the combined defense have been submitted in the Declaration of J. Michael Huget, as discussed earlier in this Report. I have recommended that Plaintiffs and Mr. Reed be held jointly responsible for them.

The question remains, then, whether Defendant JCP should recover a separate and additional award of attorney fees for the services of Johnathan D. Davis, P.C. "as the conduit between counsel of record for JCP and JCP." For the reasons that follow, I find that no additional fees should be awarded.

█ JCP, of course, was free to hire as many attorneys as it saw fit to represent its interests in this litigation. That is not to say, however, that it should be allowed to recover all attorney fees incurred. Title 17 U.S.C. § 505 provides for the recovery of "a reasonable attorneys fee to a prevailing party." Title 28 U.S.C. § 1927 allows recovery only for attorney fees "reasonably incurred because of" the improper conduct of an opposing attorney. Under either statute, it is the burden of the party seeking the recovery of attorney fees to establish the reasonableness of its request. In the instant case, JCP was protected at all times by competent counsel of record. Nonetheless, Defendant elected to retain the Davis firm as a conduit and intermediary between itself and its attorneys. I am not persuaded that such an intermediary was necessary, or even reasonable. Counsel of record were active and competent in representing JCP's interests in the case. The substantive contribution of the Davis law firm to that effort is not readily discernible from Mr. Davis' Declaration and Exhibits.

Based on the records provided, I have some question as to the effectiveness of the Davis firm as an intermediary between JCP and Plunkett Cooney. The documents reflect that Mr. Martin's fee statements remained unpaid throughout the term of his representation. Further, his communications with JCP regarding the payment of invoices for litigation support services were ignored by his client. Significant portions of the attorney time billed by the Davis firm relate directly to efforts on Mr. Martin's part to secure payment of his billings. (See Davis time entries for the period October 17, 2006 through November 17, 2006). Additional time was expended by Mr. Davis and his firm in securing the substitution of the Butzel Long firm as counsel for JCP. (See Davis entries for the period December 6, 2006 through August 3, 2007). I can identify no reasonable theory under which Plaintiffs or their counsel should be held responsible for JCP's difficulties in communicating with and discharging its financial obligations to its attorneys of record.

I further find that the exhibits attached to the Declaration of Johnathan D. Davis often fail to reveal the precise nature of the work for which payment is sought. The subject matter of telephone conferences and correspondence is often not stated. Further, there are numerous billings for telephone communications with Mr. Martin as to which there is no corresponding entry in Martin's time records.

The vagueness of the Davis time entries continued following Mr. Martin's withdrawal as counsel. Mr. Davis lists numerous communications with JCP's new attorneys of record, again without revealing the subject matter of the communications. In the final analysis, I am simple unable to determine whether the Davis law firm's time expenditures contributed in any material way to the successful defense of

Plaintiffs' Complaint. Nor am I able to determine whether any of the time expended by the Davis law firm was rendered necessary by any act of Plaintiffs' attorney. I conclude that Mr. Davis' Declaration fails to meet the standard of reasonableness under either statutory theory advanced. I recommend that no additional fees be awarded to JCP.

### D. *Salaam Nassar and Soo Soo's Sweet Swisher Music (Represented by the Law Offices of Leslie Shefman)*

Defendants Salaam Nassar and Soo Soo's Sweet Shisher Music also seek recovery of their attorney fees in this action. That request is supported by the Supplemental Declaration of Leslie C. Schefman. Ms. Schefman avers that she and a summer law clerk expended 164.56 hours in the defense of her clients. Because of her clients' limited resources, she agreed in the fall of 2006 to charge only for essential services "such as reviewing, researching and preparing papers, but not for other services, such as most telephone conferences, correspondence and the like." She agreed to defer billing until the completion of the case. Ms. Schefman represents that the time for which payment is sought is far less than was actually expended by her in the defense. Her time was billed at $225.00 per hour, and her law clerk's work was billed at $75.00 per hour. Both well within reasonable limits.

Unfortunately, the summary of legal work attached as an Exhibit to Ms. Schefman's Supplemental Declaration is lacking in substantial detail. The summary for June–July 13, 2006, for example, lists 37 hours of law clerk research, without further explanation. The billing statements also seem to switch, for no apparent reason, between time calculations on an hours/minutes basis (e.g. 55:45) and a decimal system employing tenths of hours (e.g. 1.7 hours). There are also entries reflecting work performed, but containing no time element. The defects are such that the computation of a reasonable fee is difficult.

By my calculation, the work summary reflects 128.8 hours expended by Ms. Schefman, and 41 hours contributed by her summer law clerk. As the Supplemental Declaration neither describes the qualifications of the clerk, nor provides any information relating to the nature of the work performed by that individual, I conclude that no fee should be awarded for that component of the summary. Nonetheless, while greater detail would have greatly enhanced her claim, I am satisfied that Ms. Schefman has provided sufficient information regarding her own efforts to warrant an award of fees at her normal $225.00 per hour rate. Both her records and the docket reflect her substantial participation in the case. Accordingly, I recommend that Defendants Salaam Nassar and Soo Soo's Sweet Swisher Music recover a judgment against Plaintiffs and their lead counsel, Gregory J. Reed, in the sum of $28,980.00.

### *Expert Witness Expenses*

Defendant EMI and the Universal Defendants seek reimbursement for fees paid by them to expert witnesses. Ives R. Portrafka, a senior examiner with the Center for Computer Forensics, was retained to examine a zip disc obtained from Plaintiffs' counsel on December 14, 2006. He also performed an analysis of the Fharmacy computer. His opinions were relied upon by the court in its grant of Defendants' Motion for Summary Judgment and Motion to Dismiss. (Docket Entry 248, p. 18–22). Portrafka was paid the sum of $18,142.57 for his services. That expense was split evenly between the Universal Defendants and EMI. (Quick Dec., Para-

graph 11; Huget Supp. Dec., Paragraph 12).

The same Defendants also retained Anthony Ricigliano, a musicologist, to compare the accused composition "Shot Down" and Plaintiffs' allegedly original work "ESS Beats." Mr. Ricigliano's opinion was that the two works were distinctively different. The court relied upon that opinion in rendering Judgment for the Defendants. (Docket Entry 248, pps. 28–30). Mr. Ricigliano was paid $10,325.00 for his services, and EMI and the Universal Defendants again divided the cost evenly.

■ I am satisfied that the fees paid by the Defendants to their consulting experts are not recoverable against the Plaintiffs under the Copyright Act. 17 U.S.C. § 505 permits the court, in its discretion, to "allow the recovery of full costs" and "a reasonable attorneys fee" to the prevailing party. The majority of courts which have considered the issue have interpreted the term "full costs" to include only those expenditures listed in 28 U.S.C. §§ 1821 and 1920. *Pinkham v. Camex, Inc.,* 84 F.3d 292 (8th Cir.1996); *Artisan Contractors Ass'n of America, Inc. v. Frontier Ins. Co.,* 275 F.3d 1038 (11th Cir.2001); *Data General Corp. v. Grumman Sys. Support Corp.,* 825 F.Supp. 361 (D.Mass.1993).

There is case authority for the contrary proposition. In *Twentieth Century Fox Film Corp. v. Entertainment Distributing,* 429 F.3d 869 (2005), the Ninth Circuit held that a district court may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under 17 U.S.C. § 505. The decision cites *Coles v. Wonder,* 283 F.3d 798, 803 (6th Cir.2002), in which our Circuit affirmed an award of non-taxable costs under § 505, without discussion.

In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court considered the authority of federal courts to impose upon a losing party the compensation of the prevailing party's expert witness. In a holding based solely upon Fed. R.Civ.P. 54(d) the court determined that taxable costs were limited to those set forth in 28 U.S.C. §§ 1821 and 1920. The Ninth Circuit, in *Twentieth Century Fox v. Entertainment Distributing,* distinguished *Crawford* by construing the term *"full* costs" in § 505 as authority to impose non-taxable costs, including those that lie outside the scope of § 1920, under 17 U.S.C. § 505. The theory was that the word "full" must have been intended by Congress to expand the term "costs". While I concede the logic of the argument that each word in a statute should serve a purpose, I am persuaded that the word "full" does not expand the definition of the word "costs." As "costs" are defined in 28 U.S.C. § 1921, I am inclined to agree with the majority of holdings which limits recovery to the items specified in that statute.

Our circuit applies a restrictive definition of the word "costs" in its interpretation of 28 U.S.C. § 1927 as well. The court has held that the term should be limited to taxable costs because the statute, being penal in nature, is to be strictly construed. *United States v. Ross,* 535 F.2d 346, 350–51 (1976). Expert witness fees are not taxable costs listed in 28 U.S.C. §§ 1821 and 1920. Nor are such fees properly assessed under Fed.R.Civ.P. 54(d)(1). Costs under that rule are limited to those enumerated in § 1920, and the discretion afforded to the court is discretion to deny an award of costs, and not to impose costs beyond those enumerated in the costs statute. *In Re: Cardizem Antitrust Litigation,* 481 F.3d 355 (6th Cir. 2007). The court also lacks equitable discretion to impose costs upon an attorney, as opposed to a losing party. *Id.*

It must be observed, however, that 28 U.S.C. § 1927 authorizes a court to impose liability upon a misbehaving attorney for *more* than costs and attorneys fees. The statute provides that offending counsel may be held responsible "to satisfy personally the excess costs, *expenses,* and attorney fees reasonably incurred because of such conduct." In the case at bar, the moving Defendants plausibly argue that they incurred the expert witness fees as reasonable and necessary expenses in responding to the highly questionable evidence proffered by attorney Reed in support of his clients' copyright claims. It is apparent that the court relied upon the opinions of Messrs. Portrafka and Ricigliano in rendering summary judgment for Defendants, and in determining that Reed's misconduct warranted dismissal of Plaintiffs' claims with prejudice. There is case law supporting the proposition that an attorney who prosecutes an action in bad faith may be held responsible under 28 U.S.C. § 1927 for reasonable expenses paid by an opposing party for expert opinion necessary to defend the action. See *Home Design Services, Inc. v. Schwab Development Corporation,* 2007 WL 2902963 (M.D.Fla.); *Alphonso v. Pitney Bowes, Inc.,* 356 F.Supp.2d 442 (D.N.J.2005). I am satisfied that the fees paid for expert opinion in the case at bar were reasonable and necessary expenses for purposes of a § 1927 sanction. The opinions of Portrafka and Ricigliano were highly technical and essential to the proper adjudication of the case. Each was listed as an expert witness for the trial. Each consultant performed an expert analysis, compiled a report and expressed an opinion. Defendants were obliged to pay for those services. Plaintiffs have offered no evidence that the fees charged were unreasonable in light of the work performed. Accordingly, I recommend that the expert witness fees paid by the movants be imposed against attorney Reed under 28 U.S.C. § 1927, but not against the parties Plaintiff.

### Other Expenses and Costs

Other than the fees paid to their expert witnesses, the largest single category of expense sought to be recovered by the moving Defendants is the charges paid by them for computer research. Such charges are not recoverable as "costs" under 28 U.S.C. § 1920, but they are clearly "expenses" incurred in connection with the defense of the Plaintiffs' Complaint. I find no Sixth Circuit case directly addressing this point. Despite some authority to the contrary, it appears that the majority of courts which have considered the matter have denied recovery for computer legal research as a separate expense.

> [I]t now appears settled that the costs of such research are not separately taxable, but are rather a component of attorneys fees. In support of this position, one court has observed that if the research had been done by an attorney sitting in a library reading books rather than sitting before a computer screen, nobody would dispute that the attendant fees would be properly classified as attorneys fees and not costs. And the added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching.

21A Fed. Proc., L.Ed. § 51.105 (footnotes and citations omitted).

The billing statements submitted by the moving Defendants indicate that the costs of computer legal research were billed to their clients as a separate charge from the attorney time. It would be unusual, however, in my own experience, that attorney fee statements would charge through to the client the costs incurred by a law firm in procuring and maintaining a hard copy law library. I agree with the

majority of courts that computer legal research is essentially the equivalent of such a library, and part of the overhead expense which is customarily considered in establishing an hourly rate for attorney time. I conclude, therefore, that the Defendants are not entitled to recovery computer billing costs in addition to their attorneys fees for hours devoted to research.

Movants seek reimbursement for additional expenses incurred in connection with their successful defense. Those charges include copy expenses, filing fees, telephone/ facsimile charges, delivery expenses and office supplies. Certain of those expenses may be recoverable as costs, to the extent that they are enumerated in 28 U.S.C. § 1920, by utilization of the procedure set out in E.D. Mich. LR 54.1 and the Bill of Costs Handbook adopted by this court. To the extent that they are not so recoverable, however, I find that they are, for the most part, normal expenses incidental to the practice of law, and subsumed within the overhead component of each particular attorneys hourly billing rate. Accordingly, I would recommend denial of the Motion with respect to the non-taxable law firm expenditures.

### Court Costs

As prevailing parties, the moving Defendants should be awarded their costs. Fed. R.Civ.P. 54(d). Under the Local Rules of this court, a party seeking costs must file a Bill of Costs no later than 28 days after the entry of judgment. The clerk will then tax costs under Fed.R.Civ.P. 54(d)(1) as provided in the Bill of Costs Handbook. I recommend that each moving Defendant recover such costs as may be taxed by the clerk in accordance with that procedure.

The clerk may tax costs on one days notice. On a motion served within the next five days, the court may review the clerk's action. Fed.R.Civ.P. 54(d)(1).

### Plaintiffs' Responses

In their Response to Defendants' Joint Memorandum and Supplemental Affidavits, Plaintiffs offer a number of arguments. They maintain, for example, that Defendants Joint Supplemental Memorandum was untimely; that it is insufficient because Defendants failed to meet their burden of establishing their entitlement to an award of attorney fees in their initial motion; and that it is not supported by an affidavit from each attorney who participated in the defense. I find those arguments unpersuasive.

The Joint Supplemental Memorandum was filed in Response to the district judge's determination that more detailed information was necessary to a proper decision. As I understand the court's Opinion and Order of August 15, 2008 (Docket Entry 271), Defendants were instructed to provide more detailed supporting information to the magistrate judge in connection with the referral of their Motion for hearing and determination. Implicit in the court's Order is a determination that, despite shortcomings in the initial request, the issue of attorney fee reimbursement was not foreclosed. Indeed, the entire purpose of the Order of Reference was to permit further evaluation of Defendants' Requests. Each Defendant has submitted a supplemental declaration signed by its lead counsel. Those declarations are supported by billing records which reflect hours expended on the case by subordinate attorneys. I am satisfied that the Affidavit of each lead counsel is sufficient to verify the accuracy of the firm's billing records, and that an individual Affidavit by each contributing member of the firm is unnecessary.

Plaintiffs further argue that the Defendants were not entitled to an evidentiary hearing. Once again, the Order referring this matter to the magistrate judge plainly

stated that he was to conduct such hearings as he might determine necessary to a proper recommendation.

Plaintiffs further argue that Defendant EMI April Music, Inc. is not entitled to an attorney fee award against Plaintiffs because the movant's fees were based upon vexatious multiplication of proceedings brought on by their own counsel's misconduct. I deem that argument foreclosed by the district judge's consideration of the parties respective Motions for Sanctions. My own reconsideration of those matters is not within the current Order of Reference.

Plaintiffs rightly observe that a party seeking attorney fees bears the burden of documenting his entitlement. *Webb v. County Bd. Of Educ.*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). Where the documentation is inadequate, a court may reduce the award by excluding excessive, redundant or otherwise unnecessary hours. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Plaintiffs are correct as well in observing that "hours spent reviewing records, talking to other lawyers or experts, preparing legal documents, etc., cannot be fully verified and require the court to trust the lawyer's word that the hours claimed represent necessary work actually performed." (Plaintiffs' Brief, Docket Entry 315, p. 15) (citing *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir.1986)). It is accurate to say that attorneys may have a financial interest in exaggerating the hours expended, or may have used poor judgment in allotting too many hours on some part of the case, or by unnecessarily duplicating the work of co-counsel. In the case at bar, however, there is a substantial basis for crediting the accuracy of the time records submitted by Defendants. This litigation consumed 33 months, and the docket sheet reflects 319 entries. Forty-three substantive motions were filed in the case, thirty-

one of which were filed by Plaintiffs. The volume of written product generated by the parties is readily apparent from a review of the various pleadings and motion papers. Additional evidence of the reasonableness of Defendants' time expenditures is found in Exhibit A to Defendants' Joint Supplemental Memorandum (Docket Entry 251–8). That exhibit is a copy of a letter written on February 28, 2007 by Mr. Reed to defense counsel. On page three of the letter, Mr. Reed declared that his attorney fees and costs over the first twenty-two months of the dispute exceeded $160,000.00. The docket sheet reflects only 154 entries as of the date of that declaration. The record further establishes that the intensity of the dispute, and the number of contested motions increased substantially after that date. Using Mr. Reed's own declarations as a yard stick, I have no difficulty in accepting, subject to the noted exception, the accuracy and reasonableness of the hours expended by the Defendants, in great part as a result of Mr. Reed's misconduct.

For all of the reasons stated herein, I recommend that Defendants recover their respective attorney fees, expenses and costs as follows:

1. Defendants The Island Def Jam Music Group, a division of UMG Recordings, Inc., Universal Music Publishing, Inc., Universal Music and Video Distribution Corp. and Curtis Jackson (collectively "Universal Defendants") should be awarded judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $229,578.00 as reasonable attorneys' fees. The same Defendants should recover judgment against Gregory J. Reed in the additional sum of $14,233.78, representing expert witness expenses reasonably incurred.

2. Defendant EMI April Music, Inc. should be awarded judgment against

Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $225,720.00 as reasonable attorneys' fees. The same Defendants should recover judgment against Gregory J. Reed in the additional sum of $14,233.78, representing expert witness expenses reasonably incurred.

3. Defendant Janice Combs Publishing dba Justin Combs Publishing ("JCP") should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $33,454.33, representing its attorneys' fees reasonably incurred in the defense of this action.

4. Defendants Salaam Nassar and Soo Soo's Sweet Swisher Music should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, in the sum of $28,980.00, representing attorney fees reasonably incurred in the defense of this action.

5. Each Defendant should recover judgment against Plaintiffs and Gregory J. Reed, jointly and severally, for its costs as may be taxed by the clerk in accordance with Fed.R.Civ.P. 54(d)(1) and E.D. MI LR 54.1.

### NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.